# In the United States Court of Federal Claims

No. 13-57C
(Filed Under Seal: August 13, 2014 | Reissued: August 28, 2014)*

| | |
|---|---|
| ENSIGN-BICKFORD AEROSPACE & DEFENSE COMPANY,  Plaintiff, v. THE UNITED STATES OF AMERICA, Defendant. | 28 U.S.C. § 1498; RCFC 12(b)(1); 28 U.S.C. § 1500; Claim Against the United States or Its Proxy; Pending in Another Court; Cause of Action Alleged; Patent Infringement |

*Sid Leach*, Snell & Wilmer, L.L.P., Phoenix, AZ, for plaintiff.

*David M. Ruddy*, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him were *John Fargo*, Director, and *Stuart F. Delery*, Acting Assistant Attorney General.

### OPINION AND ORDER DENYING MOTION TO DISMISS

Plaintiff Ensign-Bickford Aerospace and Defense Company ("Ensign-Bickford"), the owner of two patents directed toward ordnance firing systems,[1] has filed this action under 28 U.S.C. § 1498 claiming that Pacific Scientific Energetics Company ("Pacific Scientific"), acting as a subcontractor on a government contract, supplied products to the United States that infringed Ensign-Bickford's patents.  Compl. ¶¶ 4-6, 17-18, 22-23.  Alleging that the products were used "with the authorization and consent of the United States" as provided in 28 U.S.C. § 1498(a), id. ¶¶ 19, 24, it seeks compensation from the government for such use, "conservatively estimated, based on currently known figures, to exceed $3 million."  Id. at 5.

---

* This Opinion was originally issued under seal, and the parties were given the opportunity to request redactions.  Because the parties have not submitted any proposed redactions in the time allotted, the Opinion is now reissued, unsealed, in its entirety.

[1] The first patent (No. 6,584,907—hereinafter "the '907 patent") was issued to Ensign-Bickford on July 1, 2003, and the second (No. 6,889,610—"the '610 patent") was issued on May 10, 2005.  Compl. ¶¶ 5-6.

The government has moved to dismiss the complaint for lack of jurisdiction on the basis of 28 U.S.C. § 1500.[2]  For the reasons set forth below, the government's motion to dismiss is **DENIED**.

## BACKGROUND

### I.   The Arizona Case

Both Ensign-Bickford and Pacific Scientific are in the business of designing and manufacturing ordnance and weapons systems.  Pl.'s Resp. to Def.'s Mot. to Dismiss Ex. A, June 11, 2013, ECF No. 30 [hereinafter Pl.'s Resp.] (Compl. ¶¶ 7-8 Pac. Scientific Energetics Materials Co. (Arizona) LLC v. Ensign-Bickford Aerospace & Def. Co., No. 2:10-cv-02252-PHX-JRG (D. Ariz., filed Oct. 21, 2010)).  They are direct competitors with one another for government and commercial contracts, and for customers.  Id.

On October 21, 2010, Pacific Scientific filed suit against Ensign-Bickford in the United States District Court for the District of Arizona.  See id.  The suit was filed in response to a series of letters Ensign-Bickford sent to Pacific Scientific, accusing it of infringing Ensign-Bickford's patents through the employment of Pacific Scientific's "Smart Energetics Architecture" ("SEA") technology in connection with contracts with the United States government.  See id. (Compl. ¶¶ 10-18 Pac. Scientific).  Ensign-Bickford claimed that its concerns were based on "information obtained from customers who have sought either alternatives to [Pacific Scientific] or who have been in the process of considering Ensign-Bickford's system or [Pacific Scientific's] system who understand our patent estate and have expressed that they don't see how it is possible that [Pacific Scientific] is not in conflict with the Ensign-Bickford patent estate."  Id. (Compl. ¶ 18 Pac. Scientific) (emphasis omitted).  Pacific Scientific sought a declaratory judgment of invalidity and non-infringement of the '907 and '610 patents.  Id. (Compl. 9 Pac. Scientific).  It also alleged that Ensign-Bickford had tortiously interfered with Pacific Scientific's confidentiality agreements with its customers and potential customers.  Id. (Compl. ¶¶ 39-41 Pac. Scientific).

Ensign-Bickford filed an answer and an amended answer in which it requested as part of its "prayer for relief" that the court declare that Pacific Scientific had infringed the '907 and '610 patents at issue in this case, as well as a third patent, No. 7,278,658.  Id. at 2, Exs. B (Second Am. Answer & Countercl. Pac. Scientific), T (Answer Pac. Scientific), V (Am. Answer Pac. Scientific), Y (Order Pac. Scientific (filed Dec. 13, 2011)).  Thereafter, the court ruled that it

---

[2] Section 1500 states that:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

would not consider Ensign-Bickford's request for a declaratory judgment in the "prayer for relief" as a counterclaim and advised Ensign-Bickford that any counterclaim would be considered waived unless Ensign-Bickford sought leave to file an amended answer and add a counterclaim for patent infringement. Id. 1, Ex. I (Mem. Op. & Order 3 Pac. Scientific (Dec. 21, 2012)).

On April 2, 2012, Ensign-Bickford filed a Second Amended Answer and Counterclaims. Id. Ex. B (Second Am. Answer & Countercl. Pac. Scientific). In the introductory section to its Counterclaims, Ensign-Bickford acknowledged that the district court would lack jurisdiction to adjudicate any counterclaims for infringement for products that were used or made for the United States and with the authorization and consent of the United States within the meaning of 28 U.S.C. § 1498(a). Id. Ex. B (Second Am. Answer & Countercl. 9 Pac. Scientific). Ensign-Bickford stated, however, that documents provided to it by Pacific Scientific suggested that some of the allegedly infringing products were not used or made for the use of the United States or with the authorization and consent of the United States. Id. It alleged that it believed that a "factual contention" that Pacific Scientific had engaged in such infringement could be made after discovery. Id. It requested a declaration that—with respect to products that involved non-governmental uses—Pacific Scientific had infringed the patents, a preliminary and final injunction against further infringement, and an award of damages for Pacific Scientific's infringement. See id. Ex. B (Second Am. Answer & Countercl. 11-12 Pac. Scientific).

Pacific Scientific responded to Ensign-Bickford's counterclaims with an answer posing the affirmative defense that the counterclaims for infringement were barred, in whole or in part, by 28 U.S.C. § 1498 because all of the relevant products made, used, or sold by Pacific Scientific were the subject of contracts in which the use and manufacture of the products in question were "for the Government and with the authorization or consent of the Government" within the meaning of 28 U.S.C. § 1498(a).[3] Id. Ex. C (Answer to Countercl. ¶ 3 Pac. Scientific). Pacific Scientific alleged that Ensign-Bickford's sole remedy, if any, was by an action against the United States in the United States Court of Federal Claims. Id. Ex. C (Answer to Countercl. ¶ 3 Pac. Scientific).

---

[3] Section 1498(a) provides that,

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

It further provides that,

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

3

Thereafter, Pacific Scientific moved for summary judgment on the counterclaims based on 28 U.S.C. § 1498(a). See generally id. Ex. I (Mem. Op. & Order Pac. Scientific (Dec. 21, 2012)). On December 21, 2012, relying on that statutory provision, the Arizona court granted summary judgment to Pacific Scientific on Ensign-Bickford's counterclaims for patent infringement. Id. The court rejected Ensign-Bickford's arguments and found that each of Pacific Scientific's programs incorporating the SEA technology that was alleged to infringe Ensign-Bickford's patents were "for the government" and "with the authorization and consent of the government." Id. Ex. I (Mem. Op. & Order 7 Pac. Scientific (Dec. 21, 2012)). Therefore, the court held, "[t]he appropriate party for Ensign-Bickford to bring its claims against is the United States and the appropriate court is the Court of Federal Claims." Id. Ex. I (Mem. Op. & Order 18 Pac. Scientific (Dec. 21, 2012)).

The Arizona district court further determined that in light of the fact that Pacific Scientific was not subject to suit for patent infringement under 28 U.S.C. § 1498(a), there was no case or controversy before the court as required by the Declaratory Judgment Act, 28 U.S.C. § 2201. Id. Ex. I (Mem. Op. & Order 20 Pac. Scientific (Dec. 21, 2012)). Instead, the court concluded, the real parties in interest are the government and Ensign-Bickford. Id. It therefore dismissed Pacific Scientific's infringement claims for lack of subject matter jurisdiction. Id.

With the declaratory judgment claims and Ensign-Bickford's counterclaims dismissed, all that remained in the case was Pacific Scientific's claim for intentional interference with contract. Id. Ex. I (Mem. Op. & Order 21 Pac. Scientific (Dec. 21, 2012)). The Arizona court noted that the litigation to date had focused exclusively on the infringement claims, and it ordered Pacific Scientific to show cause why its tort claim should not be dismissed. Id. Thereafter, Pacific Scientific moved for voluntary dismissal of the remaining claim. See Def.'s Mot. to Dismiss A43, May 24, 2013, ECF No. 22 (Mem. Op. & Order 1 Pac. Scientific (March 29, 2013)). The Arizona court granted that motion on March 29, 2013 and dismissed the claim with prejudice. Id. It further directed that the entire case be dismissed with prejudice in that same order. Id.

On April 24, 2013, at Pacific Scientific's request, the district court entered judgment in the case. Id. at A50 (J. Order Pac. Scientific). On May 22, 2013, Ensign-Bickford filed a notice of appeal. Id. at A52. The appeal, which related only to the tortious interference claim, and not to Ensign-Bickford's counterclaims, see Pl.'s Resp. Ex. M, was ultimately rejected by the court of appeals for the Federal Circuit. Pac. Scientific Energetic Materials Co. (Arizona), LLC v. Ensign-Bickford Aerospace & Def. Co., 553 Fed. App'x 1004 (Fed. Cir. 2014) (per curiam).

**II.     The Present Lawsuit**

On January 23, 2013, after the Arizona court's December 21, 2012 opinion granting Pacific Scientific summary judgment on Ensign-Bickford's counterclaims, but before its March 29, 2013 opinion and order or its entry of judgment on April 24, 2013, Ensign-Bickford filed a Complaint in this Court pursuant to 28 U.S.C. § 1498. Compl. ¶ 4. Ensign-Bickford alleged that—with the authorization and consent of the United States, and without license from Ensign-Bickford—government contractors have used inventions for the United States that are covered by Ensign-Bickford's '907 and '610 patents. Id. ¶¶ 17-26. Specifically, it claims that Pacific

4

Scientific "was a subcontractor under Government contracts, and supplied its Smart Energetics Architecture ('SEA') technology in connection with such Government contracts." Compl. ¶¶ 17, 22.

The Complaint filed in this Court refers to the Arizona patent infringement action, noting that "[t]he Arizona action involved patent infringement claims concerning the Smart Energetics Architecture ('SEA') technology of Pacific Scientific Energetics Materials Company." Id. ¶ 10. It alleges that the products at issue that included SEA technology were used for the United States and with the authorization and consent of the United States, as determined by the court in the Arizona action. Compl. ¶¶ 19, 24.

## DISCUSSION

### I. Ensign Bickford's Patent Claims Against the United States Are Within This Court's Jurisdiction Under 28 U.S.C. § 1498

Whether this Court has jurisdiction to decide a case is a threshold matter, and, if no jurisdiction exists, the Court must order dismissal without proceeding further.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the plaintiff's complaint and draws all reasonable inferences in favor of the plaintiff.  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  The plaintiff, however, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  Id.

Section 1498(a) of Title 28 provides,

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

Further, section 1498(a) states that the criterion that the invention be "used or manufactured by or for the United States" is met where "a contractor, a subcontractor, or any person, firm, or corporation" uses or manufactures an invention "for the Government and with the authorization or consent of the Government."  The government does not dispute, and the Court holds, that the allegations in Ensign-Bickford's complaint bring it within this Court's jurisdiction under section 1498.

### II. The Jurisdictional Bar Set Forth in 28 U.S.C. § 1500 Is Inapplicable

While this Court has jurisdiction over Ensign-Bickford's patent claims under 28 U.S.C. § 1498(a), the government argues that its exercise of jurisdiction is barred by 28 U.S.C. § 1500. That statute provides that the Court of Federal Claims lacks subject matter jurisdiction

5

> of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Id.  According to the government, section 1500's jurisdictional bar is applicable here because, at the time that Ensign-Bickford filed this case, the district court in Arizona had not yet entered final judgment in the Pacific Scientific litigation.  Def.'s Mot. to Dismiss 4-5.

There are two inquiries required to determine the applicability of section 1500.  Brandt v. United States, 710 F.3d 1369, 1374 (Fed. Cir. 2013).  The first is whether there is an earlier-filed "suit or process" pending in another court against either the United States or any person acting or professing to act on behalf of the United States with respect to the "cause of action alleged" in that earlier filed suit or process.  Id.  If there is such a pending suit or process, the second question is "whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action."  Id.

It is well established that a counterclaim is a "suit or process" within the meaning of section 1500.  Brandt, 710 F.3d at 1374.  It is equally well established that "[w]hether an earlier-filed 'suit or process' is 'pending' for § 1500 purposes is determined at the time the complaint is filed with the Court of Federal Claims."  Id. at 1375 (citing Keene Corp. v. United States, 508 U.S. 200, 207 (1993) (noting that jurisdiction "depends upon the state of things at the time of the action brought") (citation omitted))).

In this case, it is unnecessary to address the second question (regarding whether the counterclaims asserted in the Arizona case are "for or in respect to" the same claims asserted here) because, as discussed in greater detail below, the "cause[s] of action alleged" in those counterclaims were not against the United States or against Pacific Scientific acting or professing to act under the authority of the United States.   Second, and in any event, Ensign-Bickford's counterclaim in the Arizona case was not "pending" at the time this suit was filed.  Accordingly, section 1500 does not bar the Court's assertion of jurisdiction over this case.

      A.     **The Cause of Action Alleged in the Arizona Counterclaim Was Not Against the United States or a Person Acting or Professing to Act Under the Authority of the United States in Respect to that Cause of Action**

As the Supreme Court has explained, Congress enacted section 1500 "to curb duplicate lawsuits brought by residents of the Confederacy following the Civil War."  United States v. Tohono O'odham Nation, 131 S. Ct. 1723, 1728 (2011).  In particular, Congress sought to address the burden imposed upon the United States by the practice of individuals (known as the "cotton claimants") suing it in the Court of Claims under the Abandoned Property Collection Act, 12 Stat. 820, to recover for cotton taken from them by the federal government, while simultaneously suing federal officials in tort in other courts for the same alleged actions.  Id.  The clear purpose of the statute, the Supreme Court observed in Tohono, was to "save the Government from burdens of redundant litigation."  Id. at 1730.

6

Given section 1500's purposes of protecting the United States against costly and duplicative litigation, the threshold requirement for the application of section 1500's jurisdictional bar is that the earlier-filed suit was itself "against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States." 28 U.S.C. § 1500. In other words, the earlier-filed action must be against (a) the United States itself or (b) its proxy. See Nextec Applications, Inc. v. United States, 114 Fed. Cl. 532, 536-37 (2014).

In the Arizona case, Ensign-Bickford's counterclaim was not against the United States itself; it was against Pacific Scientific, the plaintiff. But that does not end the inquiry because, as noted, the jurisdictional bar in section 1500 is also applicable where the private-party defendant (or in this case counter-defendant) in the earlier-filed suit was acting or professing to act as a proxy for the United States—that is, "under the authority of the United States" in respect to the "cause of action alleged" in the complaint.

In this case, the cause of action alleged in Ensign-Bickford's counterclaim in the Arizona court was not against Pacific Scientific as a proxy for the United States. Pl.'s Resp. Ex. B (Second Am. Answer & Countercl. 9). On the contrary, Ensign-Bickford explicitly limited its counterclaims to alleged infringements of its patents by Pacific Scientific that were neither for nor with the consent and authorization of the United States. It did so because it understood that claims arising out of any government-authorized uses would be within this Court's exclusive jurisdiction under section 1498, governing patent actions concerning inventions that are used or manufactured by or for the United States.[4]

To be sure, the district court ultimately rejected the counterclaims because it concluded that none of the infringements alleged in the counterclaim occurred in connection with uses that were not authorized or consented to by the United States. Therefore, it found Pacific Scientific immune from the counterclaims. Pl.'s Resp. Ex. I (Mem. Op. & Order 18 Pac. Scientific (Dec. 21, 2012)). But the district court's ruling on that point does not transform "the cause of action alleged" in the counterclaim from one against Pacific Scientific for uses that were not government authorized into one against the United States or its proxy. Cf. d'Abrera v. United States, 78 Fed. Cl. 51, 58-59 (2007) (holding that a copyright infringement claim against an individual in district court did not bar this court's jurisdiction over a copyright infringement claim against the United States because in the case before the district court, plaintiff alleged that the individual acted on his own, and in the case before this court, plaintiff alleged that he acted as an agent of the United States).

---

[4] Specifically, Ensign-Bickford acknowledged that, if Pacific Scientific's contentions that all of the accused products were the subject of government contracts were true, "Ensign-Bickford's sole remedy [would be] an action against the United States in the United States Court of Federal Claims, and this counterclaim would be a claim upon which this Court could not grant relief." Pl.'s Resp. Ex. B (Second Am. Answer & Countercl. 9).

7

The government contends that it is improper to focus on what it calls the "subjective" allegations in Ensign-Bickford's counterclaims to determine whether those claims were against Pacific Scientific as a proxy for the United States. It argues that this focus is inconsistent with the Supreme Court's decision in Tohono, which warned against interpretations of section 1500 that could be circumvented by the manner in which two cases against the United States arising under the same operative facts are pled. 131 S. Ct. at 1730 (observing that "[a]n interpretation of § 1500 focused on the facts rather than the relief a party seeks preserves the provision as it was meant to function, and it keeps the provision from becoming a mere pleading rule, to be circumvented by carving up a single transaction into overlapping pieces seeking different relief"). Instead, the government contends, whether section 1500 is applicable is determined by the ruling of the district court holding that Pacific Scientific did, in fact, act as a proxy for the United States with respect to all of the uses Ensign-Bickford alleged had infringed its patents. Def.'s Supp. Br. 3 n.3, ECF No. 50; Oral Arg. Tr. 8, ECF No. 59.

The Court is not persuaded by the government's reliance upon Tohono. In Tohono, it was undisputed that both the pending suit and the suit in this court were brought against the United States. For that reason, in Tohono the United States was potentially liable in both courts for claims arising out of a single transaction. In that context, the Supreme Court was concerned that section 1500's purposes would be circumvented if its application depended upon what relief the plaintiff had sought against the United States in each of its complaints or what legal violations were alleged. This case arises in a very different context. The focus here is properly on the cause of action alleged (as opposed to what the district court ultimately found) because— unless the claim in the earlier-filed suit was framed as a cause of action against the United States or its proxy—there was never even the possibility that the United States would incur liability in the earlier-filed suit. In this context, focusing on the allegations themselves (to determine whether a claim was against the United States or its proxy) does not risk a circumvention of section 1500's purposes. To the contrary, unless the allegations reveal claims against the United States or its proxy in both actions, then the purposes of section 1500 are not even implicated. Indeed, at oral argument in this case, counsel for the government acknowledged that because Ensign-Bickford disavowed any claim in the Arizona case against Pacific Scientific acting with the authorization and consent of the United States, the interests of the United States were never at risk in that action. Oral Arg. Tr. 28-29.

In short, the counterclaim in the Arizona case does not fall within the language of section 1500 because the cause of action Ensign-Bickford alleged was not against the United States or Pacific Scientific acting as its proxy. Further, section 1500's purpose of relieving the government of the burdens of redundant litigation was not threatened by the Arizona action. Accordingly, the jurisdictional bar in section 1500 does not apply to this case.

**B.   In Any Event, the Arizona Counterclaim Was Not "Pending" at the Time This Suit Was Filed**

Assuming, arguendo, that the counterclaims for patent infringement against Pacific Scientific in Arizona were suits against the United States or its proxy, section 1500 would still be applicable only if those counterclaims were "pending" at the time this complaint was filed, on January 23, 2013. The government argues that the counterclaims were pending, notwithstanding

8

that the district court had issued an opinion and order on December 12, 2013 dismissing them, because the district court did not enter final judgment in the entire case until April 2013. Def.'s Mot. to Dismiss 4-5. This argument, however, is inconsistent with the interpretation of section 1500 that the Federal Circuit articulated in Brandt, 710 F.3d at 1379-80.

In Brandt, the court of appeals concluded that "once a claim is dismissed or denied, it is no longer 'pending' for § 1500 purposes until a motion for reconsideration or notice of appeal is filed." Id. The government correctly points out that the procedural posture of the case in Brandt involved claims for which the district court had already entered judgment, and the issue as the court characterized it was whether the claims were pending between entry of final judgment and the filing of a notice of appeal. Def.'s Mot. to Dismiss 5 (citing Brandt, 710 F.3d at 1375). Thus, the actual holding in Brandt is not dispositive here. But it is nonetheless significant that the court of appeals' formulation of its holding did not link the issue of whether claims were "pending" in another court to the formal entry of judgment; rather, it linked the termination of the claims to their "dismissal" or "denial." See Brandt, 710 F.3d at 1379-80.

Further, the government's position that claims against the United States remain pending until entry of judgment in the entire case is inconsistent with the court of appeals' approach regarding the definition of the statutory term "pending." As the court of appeals observed in Brandt, "Black's Law Dictionary defines 'pending' as 'remaining undecided; awaiting decision.'" 710 F.3d at 1378 (alteration omitted) (citing Black's Law Dictionary 1248 (9th ed. 2009)); see also Young v. United States, 60 Fed. Cl. 418, 424 n.9 (2004) (observing that this meaning of the term "pending" is consistent with the meaning ascribed to the word at the time section 1500 was enacted). This expression of the definition of the word "pending" belies the government's argument that a formal entry of judgment is required to render a claim no longer a "pending" one. Therefore, once claims are dismissed or denied by a court, as they were here in the December 21, 2012 Opinion and Order, they are no longer "undecided" or "awaiting decision" and thus are not "pending" within the plain meaning of that word. And while such claims could in theory be revived in the district court prior to the entry of final judgment, an affirmative act such as the filing of a motion for reconsideration would be required to transform the decided claims into claims that are undecided or awaiting decision. Cf. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12, n.14 (1983) (stating that it "is true only in the technical sense that every order short of a final decree is subject to reopening at the discretion of the district judge" and that many interlocutory orders "are made with the expectation that they will be the final word on the subject addressed"). Absent such an act, or perhaps a sua sponte decision by the district court to revisit the claims, they are no longer "pending" because they have been decided.[5]

---

[5] At the oral argument in this case, the government suggested that permitting a suit to go forward in the Court of Federal Claims before final judgment is entered in the district court raises the specter of duplicative litigation in the event that the district court decides to reconsider its ruling either on its own or pursuant to a motion for reconsideration. Oral Arg. Tr. 19-22. But the same possibility of duplicative litigation exists under Brandt because it is entirely possible that following entry of judgment a party could file a complaint in this Court and then file either a motion for reconsideration or a notice of appeal of the district court's decision.

9

In fact, the Brandt court's formulation of the rule for determining whether a claim is "pending in another court" is almost identical to the one that this court used in a case that arose in a procedural posture that is for all material purposes identical to this one. See Young, 60 Fed. Cl. at 425 (noting that "once a claim is dismissed or denied, it is no longer pending in another court, for purposes of Section 1500, until a motion for reconsideration or notice of appeal is filed"). In Young, suit was filed against the United States in this court after the United States was dismissed as a party from a district court action, but before entry of final judgment in that case. See id. at 423. This court found section 1500 inapplicable notwithstanding that judgment had not yet been entered in the district court case. Id. at 424. In fact, the Court made clear that an entry of judgment was not necessary to terminate the claim for purposes of section 1500, observing that "between the time of dismissal or judgment and the filing of a notice of appeal, there was no legal action pending for Section 1500 purposes." Id. at 425 (emphasis supplied).[6]

The court of appeals' holding in Boston Five Cents Savings Bank, FSB v. United States, 864 F.2d 137, 139 (Fed. Cir. 1988) ("Boston Bank"), overruled on other grounds by UNR Indus., Inc. v. United States, 962 F.2d 1013 (Fed. Cir. 1992), is also instructive. In Boston Bank, after losing a case on summary judgment, the plaintiff appealed and secured a remand to the district court. Boston Bank, 864 F.2d at 138. On remand, it moved to amend its complaint to add a money damages claim. Id. The motion was denied on the grounds of "inexcusable delay." Id. The bank subsequently filed a lawsuit seeking money damages in the Court of Federal Claims. Id. The Federal Circuit reversed this court's dismissal of the case under section 1500 and rejected the government's argument that "until the damage claim raised in the district court is resolved on appeal, that claim is pending." Id. at 139. It determined that the claim was not "pending" in another court because the motion to amend had been rejected. Id. Most significantly for purposes of this case, although the judgment had not been entered yet in the district court matter (in fact, the trial had at that time not yet started), the fact that no final judgment had been entered did not make the money claim one that was "pending" for purposes of section 1500. See id.; see also Brandt, 710 F.3d at 1376 (rejecting the government's efforts to distinguish Boston Bank on the ground that in that case, the claim for money damages was never

---

[6] It bears noting that the approach in Young is cited approvingly in Brandt, 710 F.3d at 1376, 1378. Before Brandt, there was split in authority in the Court of Federal Claims on the issue of whether a claim was still pending until the time for appeal had passed. See id. at 1375. Compare Vero Technical Support, Inc. v. United States, 94 Fed. Cl. 784, 795 (2010) ("The right to an appeal, if still available and not renounced by plaintiff, is part of an ongoing suit or process initiated by plaintiff in the District Court, for which reason, plaintiff's claim is still 'pending' for purposes of a section 1500 analysis."), and Jachetta v. United States, 94 Fed. Cl. 277, 283 (2010) (holding that "a suit is pending for purposes of section 1500 until its final adjudication on appeal or until the time for appeal has run"), with Young, 60 Fed. Cl. at 425 ("The Court concludes that, once a claim is dismissed or denied, it is no longer pending in another court, for purposes of Section 1500, until a motion for reconsideration or notice of appeal is filed."), and Bolduc v. United States, 72 Fed. Cl. 187, 196 (2006) ("Mr. Bolduc could have filed a claim here in the weeks between July 8, 2003 and August 1, 2003—the time between the entry of judgment in the district court and the plaintiff's filing of the notice of appeal to the First Circuit.").

10

added to the plaintiff's district court complaint because the district court denied the plaintiff's motion to amend and observing that Boston Bank "supports the idea that a dismissed or denied claim is no longer pending for § 1500 purposes until a notice of appeal or motion for reconsideration is filed").

In arguing that the Arizona counterclaims were pending until entry of final judgment, the government relies upon a passage in Tohono, in which the Supreme Court instructed that the interpretation and application of the phrase "for or in respect to" contained in section 1500 should be "consistent with the doctrine of claim preclusion, or res judicata." Def.'s Reply 2 (quoting Tohono, 131 S. Ct. at 1730). The government observes that, under those doctrines, an adjudication of fewer than all of the claims in a case has no res judicata effect unless there was an express determination to enter final judgment as to some but not all of the claims under Federal Rule of Civil Procedure 54(b). Def.'s Reply 3-4. Therefore, it argues, the word "pending" in section 1500 should be interpreted to encompass any claims for which final judgment has not yet been entered. Id. 5-6.

The government's argument is unpersuasive. Tohono did not involve the interpretation of the term "pending," and the Court's discussion of principles of res judicata did not occur in the context of deciding whether a claim was "pending." See 131 S. Ct. at 1730. In fact, in Tohono it was undisputed that at the time that the plaintiffs filed suit in this court, they had claims pending in the district court. The issue in Tohono was "what it means for two [pending] suits to be 'for or in respect to' the same claim" within the meaning of section 1500. 131 S. Ct. at 1727. The Supreme Court concluded that two suits are "for or in respect to the same claim" where the pending suit in district court is "based on substantially the same operative facts," even if no overlap exists between the relief sought in this Court and the relief sought in the district court. Id. at 1731. In so holding, the Supreme Court noted that principles arising out of the doctrine of res judicata were instructive in determining the requisite relationship between the two pending claims because one of the reasons section 1500 was enacted was "to address the problem that judgments in suits against officers were not preclusive in suits against the United States." Id. at 1730.

In short, the Supreme Court's discussion in Tohono concerned whether claims that were undisputedly "pending" in the district court at the time that suit was filed in this court were sufficiently related to each other to invoke section 1500's jurisdictional bar. Principles of res judicata were logically instructive on that point, but neither the Supreme Court, nor the court of appeals in Brandt, suggested that a decision on a claim must be final for purposes of the application of res judicata in order for it to no longer be "pending" under section 1500. Indeed, for the reasons set forth above, the court of appeals' precedent on the issue is to the contrary and demonstrates that once a claim is dismissed (whether or not judgment has been entered), it is no longer pending for purposes of section 1500.

In sum, at the time that this suit was filed, Ensign-Bickford's counterclaims against Pacific Scientific were no longer pending in the district court because they had been dismissed. Therefore, even if the causes of action alleged in the counterclaims in the Arizona court are considered to be against the United States or its proxy, the requirements for the application of section 1500's jurisdictional bar have not been met.

## **CONCLUSION**

The government's motion to dismiss is **DENIED**.

Pursuant to the Court's April 18, 2013 Protective Order, this Opinion and Order has been filed under seal. To the Court's knowledge, however, this Opinion and Order discloses no sensitive, proprietary, or otherwise confidential information. Therefore, the Court will unseal this Opinion and Order in fourteen days, on August 27, 2014, unless a party covered by the Protective Order files an objection and proposed redactions before that date.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge
